COLL, PETITIONER AND APPELLEE, *v.* ARZUAGA, RESPONDENT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in Proceedings for Mandamus.

No. 1454.—Decided July 28, 1916.

MANDAMUS — CORPORATION — EXAMINATION OF BOOKS — STOCKHOLDER. — When a stockholder who petitions for a writ of mandamus to command the president of a corporation to allow him to examine the books, accounts and contracts of the corporation and take such notes as he may deem advisable fails to show that he first made such request of the respondent in due form and the latter refused such permission, the writ will not be granted.

The facts are stated in the opinion.

*Messrs. Eduardo Acuña* and *Henry G. Molina* for the appellant.

The appellee appeared *pro se.*

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff, appellee, the owner of thirty shares in the Carolina Sugar Company and apparently representing in some way or another or controlling to some extent two hundred and ten shares belonging to Carlos Cabrera, obtained in the District Court of San Juan a mandamus against Pedro Arzuaga, president of the company, ordering him "to place at the disposal of the plaintiff for examination any book or document belonging to the Carolina Sugar Company which the said plaintiff may ask for, fixing a convenient time and place for him to inspect said books and documents and to take such notes as he may think proper."

The testimony of petitioner on cross-examination closes with an admission that he was present at a general meeting of the stockholders of the corporation on July 1, 1914, approving all that was done and with the following explanation of his attitude on that occasion:

"Q. How is it that at that time you knew the condition    *    *    *?
A. I did not know it then. That is another story which I am going to tell. Besides    *    *    *.

"Q. That is immaterial. Then, when you accepted the report of the directors and the accounts at the general meeting of the stockholders in 1914 you did so notwithstanding the fact that you knew    *    *    *. A. No, sir, I did not do so notwithstanding the fact that I knew. I did so because Mr. Arzuaga bought from me thirteen thousand dollars' worth of bonds which I had and paid me a price which was very good at that time, and as that was what I was interested in I made no objection as I would have made none if he had bought my stock, which is what concerns me."

On June 10, 1915, petitioner wrote Eduardo Acuña, attorney for defendant, appellant, as follows:

"MY DEAR MR. ACUÑA: A year ago we closed negotiations for the bonds of the Progreso Central, leaving that of the stock for later. That transaction appeared to be bad for Mr. Arzuaga and good for Don Carlos, but the war came on later and it resulted bad for Don Carlos and good for Arzuaga. Such are the eventualities of business and I am very glad that Arzuaga lost no money in the transaction.

"Now, when we effected that transaction we did not treat merely of the sale of the bonds, but also of a reorganization of the company to be arranged between you and me if the stock of Mr. Cabrera was not bought, and if, on the contrary, the reorganization did not suit Sobrinos de Ezquiaga, then they would buy the stock from us.

"I own personally thirty (30) shares of stock in 'Progreso' and have negotiations pending with Don Carlos by which, if closed, I shall have all of his stock—two hundred and ten (210) shares. I must arrive at an agreement with Sobrinos de Ezquiaga before June 30, either for the reorganization of the company, so that the stock will have some cash value, or for the sale of this stock.

"In their own interest Sobrinos de Ezquiaga are the fiscal agents of the Progreso Central against all law and against the most fundamental principles of corporation law. In other words, a mercantile

firm whose managing partner is Mr. Arzuaga is acting as the fiscal agent of a corporation whose president is the same Mr. Arzuaga. The law is clear on this point and all profits, to the last cent, which Sobrinos de Ezquiaga may have been able to obtain in their transactions with Progreso Central would have to be returned to the central if any stockholder should so claim in the Federal Court. I did not wish to have to go to that extreme, but I am determined to make something on my stock, either by putting the company on a solid and genuine foundation under an independent management or by selling it.

"I hope you will consider this question at the earliest possible moment and your answer will be appreciated.

"Your sincere friend,
(Signed)          "CAY. COLL CUCHÍ."

This was followed on June 15 by a note in which petitioner says:

"MY DEAR MR. ACUÑA: The judge of the Federal Court will leave the island about the last of this month or the first of June and I would like to have the matter of the Carolina stock settled one way or another before he goes. I fear that this will become known to the public if we delay it. I consider the case very serious and would like to try to arrive at an agreement before deciding to bring suit.

"If you desire that we talk the matter over I am always at your orders and you have only to advise me by telephone.

"Truly yours,
(Signed)          "CAY. COLL CUCHÍ."

The next day he addressed Pedro Arzuaga directly thus:

"MY ESTEEMED FRIEND: I enclose a copy of a letter which I wrote to our mutual friend Eduardo Acuña some days ago. It refers to a business matter of some importance and consequence and I would like to settle it soon and in a friendly way. Having received no reply from Mr. Acuña, I wrote him a note on the 15th, reminding him of my letter and received from him today a letter which reads as follows:

"'ESTEEMED FRIEND: For my part I am not going to decide the matter referred to in your letter of the 15th and the one before. At this time I am occupied with exclusively personal business and cannot put off attending to it for any reason; therefore I decline to

take any part in this matter and with this understanding you may act as you think proper.

" 'With nothing further to advise, I remain, your sincere friend, (Signed) Eduardo Acuña.'

"As you will understand, Mr. Acuña having declined to take any part in the matter, I am forced to treat directly with you and I request that you give it your attention just as soon as your many duties will allow you an opportunity, for I am irrevocably resolved to settle the Progreso question if I cannot dispose of my stock and the two hundred and ten (210) shares which I have negotiated for with Mr. Cabrera, although I may have to resort to the Federal Court for that purpose.

"Respectfully yours,

(Signed)          "CAY. COLL CUCHÍ."

On June 25 Arzuaga replied:

"DEAR SIR AND FRIEND: Replying to your favor of the 16th instant, I have to inform you that I do not desire to purchase the Progreso stock which you offer me.

"Truly your friend,

(Signed)          "PEDRO ARZUAGA."

On the same day petitioner wrote Sosthenes Behn, secretary of the company, as follows:

"DEAR SIR AND FRIEND: On June 23rd I wrote you officially the following letter:

" 'San Juan, P. R. June 23, 1915.

" 'Mr. Secretary of the Carolina Sugar Co., San Juan P. R.

" 'Sir: I have received notice of the ordinary general meeting of the stockholders of that company to be held on July 1, 1915.

" 'At least five days before that date I desire an opportunity to inspect the minutes of the company for the last two years, both those of the general meetings and those of the board of directors, and also to examine the accounts and balances of the last year.

" 'For this purpose I desire that in due time you fix for me two hours in which I may have the said books at my disposal in the office of the company and advise me at what hour I may examine them.'

"Yours truly,

(Signed)          "CAY. COLL CUCHÍ."

The next day he addressed the following communication to Arzuaga as president of the company:

"DEAR SIR AND FRIEND: For several days I have been trying to get the secretary of that company to place the books of the company at my disposal, but without success.

"I first addressed the said secretary in a letter which was delivered to an employee of Sobrinos de Ezquiaga and was not answered. Later I addressed a letter to Mr. Sosthenes Behn who gave me to understand that he knew nothing of the secretary's office. Nor have I been able to get in communication with the treasurer.

"As all this is quite astonishing considering the near approach of a general meeting of the stockholders, I appeal to you to advise me at what hour of the morning of the 30th I may examine the following books:

" 'Minutes.'

" 'Accounts.'

" 'Contracts with planters.'

" 'Report of Progreso Central on the grinding season of this year.'

"If I do not receive a favorable reply before 9 a. m. Monday I shall be obliged to resort to the courts.

"Very respectfully,

(Signed)        "CAY. COLL CUCHÍ."

On the same date Arzuaga replied:

"DEAR SIR: The undersigned has just received your letter of this same date and in reply to your request therein, you may come at any office hour of the 30th, in the morning as you indicate in your above-mentioned letter, and it will give me much pleasure to furnish you with all the data which you may desire to obtain relating to the business affairs of this company.

"Yours truly,"

Petitioner did not improve the opportunity so offered him, but on July 3 addressed the president of the company as follows:

"SIR: As a stockholder of the company I desire a list of the planters who are under contract with the company, as well as the terms of each contract. Also, a list of the planters who deliver

sugar cane, but have no contract, and the terms on which they do so.

"Begging that you give a prompt order for the purpose of having delivered to me the information requested, I remain,

"Very respectfully,
(Signed)          "CAY. COLL CUCHÍ."

Four or five days later, without previous notice or request for the setting of any convenient time and without any mention whatever of purpose, motive, or reason for his action, he sent to the president a personal representative with the following note:

"DEAR SIR: The bearer of this letter is my father-in-law, Mr. Juan Pujol, who is accompanied by my stenographer in order to take some notes which I need from the minutes of the Carolina Sugar Company, and I request that in the office of the said company you will deliver the minute-book to him and provide for him a place where he may examine it.

"Very respectfully,
(Signed)          "CAY. COLL CUCHÍ."

Pujol was not permitted to examine the book referred to and on the same day petitioner instituted proceedings for mandamus. Petitioner in his testimony offers the following explanation of his failure to examine the books at the time and place fixed pursuant to his own request:

"In these circumstances, through friends of both parties and even more through Mr. Arzuaga's friends than my own, I learned of certain transactions which did not please me, and as I am a stockholder I wrote a letter to the president of the Carolina Sugar Company asking for certain information, which was not sent to me nor was the letter answered. Then I wrote another letter fixing an hour of a day, which I do not remember, for me to go and examine the books of the company, but at that same time I received the notice from the company of the general meeting of the stockholders to which would be submitted the accounts and transactions of the year, and immediately after said notice I received a letter from Mr. Arzuaga saying that he granted my request and that I might go to inspect the books on the day and at the hour designated. That day was one or two days before the general meeting of the stock-

holders, so I believed candidly that my request and visit were absolutely useless inasmuch as there was going to be a general meeting of the stockholders at which the accounts would be presented and reports be made to the stockholders of the company; and as there was no bad faith on my part nor purpose of any kind to injure Mr. Arzuaga, but merely a desire to know whether my stock was worth anything or not, I decided to wait. The general meeting of stockholders was set for 9 a. m. in the upper story of the building occupied by Sobrinos de Ezquiaga and at ten or half past ten a. m. it was called to order.''

The letter to Behn dated June 25, together with the other correspondence, *supra,* shows, however, that it was probably the letter from Arzuaga declining to purchase the shares of petitioner, if any at all, and not the notice of a stockholders' meeting that crossed the letter from petitioner to Arzuaga, dated June 26, demanding access to the books; and, further, that on or before June 23 and therefore prior to his request made on June 26 as aforesaid for the fixing of some hour during the day of the 30th for an examination of the corporation books, petitioner had received formal notice of the stockholders' meeting to be held on July 1.

And in full harmony with the spirit of the demand made through the unheralded agent Pujol, cross-examination developed the following significant summing up of petitioner's attitude from the beginning and throughout the entire history of this controversy:

''Q. And why did you not go on the day before, the 30th, when Mr. Arzuaga wrote you in that letter that you might come that day to examine the books? A. Because I manage my affairs according to my pleasure and as that was a matter of interest to me I thought that I could examine the books when it should be convenient to me and not when it suited those who are managing the business through the confidence placed in them by the board.''

Whatever the motive of petitioner may have been, the methods adopted by him from the date of his first communication to Acuña, *supra,* down to the day upon which his petition was filed, were peculiarly aggressive, and, to say

the least, were hardly calculated to inspire in the mind of respondent, appellant, any large degree of confidence in the good faith and honesty and sincerity of purpose which are now claimed to have prompted the desire to examine the records and papers of the corporation. Respondent, appellant, without objection or reservation of any sort or kind; without attempting to place any restriction or limitation upon the fullest possible freedom of action on the part of petitioner, appellee, and without a moment of hesitation or delay, acceded to the first demand ever made directly upon him, and, notwithstanding the abrupt and threatening tone thereof, courteously acquiesced in the date arbitrarily fixed by petitioner, appellee, himself, leaving the hour entirely to him; and, further, volunteered to furnish all the information he might desire in connection with the progress of the affairs of the corporation. Petitioner, without any satisfactory explanation or excuse, having wholly failed to appear at the time and place fixed by himself and agreed to by respondent, has small reason to complain that Pujol did not receive a warmer welcome, arriving as he did without previous announcement of his coming; without consultation of the convenience of respondent, and without even the suggestion of fixing any definite time for the proposed examination or any indication whatever as to the motive, purpose or reason for the request.

In the circumstances, we feel that any discussion of abstract propositions of law involving the rights of the stockholders to examine the books of the corporation would be superfluous. The record does not show any such request for opportunity to examine the corporate records or any such refusal on the part of respondent to permit such examination as would warrant the issuance of the writ of mandamus. We have no reason to believe that respondent would refuse to comply with any proper and reasonable request; but, however this may be, no final determination of the respective contentions of the parties as to what rules of law should

govern this case can be had until after a clear and definite demand has been made in proper form and the privilege so asserted has been denied.

The judgment appealed from must be

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.